UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ONDRA D. GALLOWAY,<br><br>                    Plaintiff,<br><br>        v.<br><br>BOISE, INC., and BOISE PAPER<br>HOLDINGS, LLC.,<br><br>                    Defendants. | No.   2:13-CV-5070-SMJ<br><br><br>**ORDER DENYING DEFENDANTS'<br>MOTION FOR SUMMARY<br>JUDGMENT** |

Before the Court, without oral argument, is Defendants' Motion for Summary Judgment, ECF No. 19. Having reviewed the pleadings and the file in this matter, the Court is fully informed and denies Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

**A.    Factual background[1]**

Defendants first hired Plaintiff Ondra Galloway in 1979 at their Boise Paper Wallula Mill ("mill"). ECF No. 31-1 at 6. First hired as a helper, Plaintiff has worked for Defendants in the shipping department, in maintenance, and as an

---

[1] Given this is an order on a motion for summary judgment, the factual background section takes the evidence and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff, the non-moving party. *Smith v. Clark County School Dist.*, 727 F.3d 950, 954 (2013).

ORDER - 1

oiler. *Id.* at 6-7. In 1992, Plaintiff became a journeyman millwright and journeyman millwright oiler, a position he held until 2012. *Id.* at 7.

In May 2007, Plaintiff was sent to grease bearings on the lump crusher at the mill and to inspect the area where it was located. *Id.* at 22. He suddenly began to vomit and continued to do so for several hours. *Id.* When his condition did not improve the following day, he went to an emergency room, where doctors ran tests but could not identify the cause of the vomiting. *Id.* at 23. Though Plaintiff suffered from vomiting episodes from that point, he first brought up this condition to Defendants in January 2012 when he was dealing with an unrelated vocational shoulder injury. *Id.* at 41. Plaintiff did not know what caused this condition, ECF No. 31-1 at 25, and, in a Labor and Industries accident claim, he attributed the issue to excessive inhalation of lime dust. ECF No. 31-2 at 43.

From this point, Plaintiff saw a variety of doctors, specialists, and other medical providers, who put restrictions on his working conditions to accommodate his medical issue. *See* ECF No. 24-1 at 31-41; ECF No. 31-2 at 45, 50-61.

On January 23, 2012,  Plaintiff agreed to wear a dust mask when working in the lime kiln area, ECF No. 24-1 at 31; ECF No. 31-2 at 45, his assigned area at the time. ECF No. 31-1 at 28. The dust mask, however, only made Plaintiff's condition worse. ECF No. 31-1 at 45-46. After a vomiting episode on February 7,

2012, Plaintiff met with Defendants' nurse who sent him home until Plaintiff could meet with Dr. Jim Johnson, a doctor who had contracted with Defendants. *Id.* at 47- 48.

After a February 9, 2012 appointment, Dr. Johnson determined that Plaintiff should be limited "from moderate exertion that would generally cause shortness of breath, exposure to fumes and exposure to cold air." ECF No. 31-2 at 50. Plaintiff believed these limitations were too restrictive because he was not sensitive to all fumes and such a restriction essentially made him unable to work at the mill at all. ECF No. 31-1 at 48.

On February 10, 2012, Plaintiff went to get a second opinion from Serena Williams, his primary healthcare provider, who wrote a note informing Defendants that Plaintiff could return to work immediately but that he should be limited to working inside until more could be determined about his medical issue. ECF No. 31-2 at 52. This note caused Defendants to move Plaintiff from the lime kiln area, which was outdoors and where he had been working for some time, to Paper Machine 3. ECF No. 31-1 at 48.

On April 19, 2012, Plaintiff went back to Dr. Johnson to review the initial restrictions and to request further testing to establish what Plaintiff could and could not do at work. *Id.* at 49. Dr. Johnson changed Plaintiff's restrictions to "avoid exposure to NCG" (non-condensable gases). ECF No. 31-2 at 54. Plaintiff

did not receive notice of these changes and Dr. Johnson disregarded Plaintiff's request for additional tests. ECF No. 31-1 at 49.

Plaintiff only found out about the change after Defendants asked him to do a welding job on April 23, 2012, and Plaintiff inquired if that request was permissible given his restrictions. *Id.* at 49-50. Despite Dr. Johnson's revised opinion that did not list welding as a restriction, welding fumes gave Plaintiff issues and he could not complete the task without a vomiting episode. *Id.*; ECF No. 31-2 at 40. On April 25, 2012, Plaintiff went to see Williams again for more guidance. *Id.* He received updated restrictions that limited him to working inside, without a dust mask, and away from chemicals that cause irritation to the lungs. ECF No. 31-2 at 55.

For some time, Plaintiff worked with no incidents. On May 21, 2012, however, Plaintiff had two vomiting episodes, the first while cleaning a compressor room where he was exposed to a propane leak and the second when he happened to walk by a bad sump pump that had bad oil being cleaned out. *Id.* at 40; ECF No. 25 at 6.

On July 25, 2012, Defendants' nurse faxed Williams a request for greater detail as to the tasks that Plaintiff could and could not perform at the mill. ECF No. 31-2 at 58. Before receiving a response, Defendants sent Plaintiff into the "kymar" area for a scheduled shut down. ECF No. 25 at 7. Kymar is the pulp

digester at the mill where there are chemical fumes, including chlorine. ECF No. 24-2 at 8-9; ECF No. 24-4 at 7. This particular area is half outdoors and half indoors. ECF No. 24-4 at 9. Being sent to this area caused Plaintiff to have another vomiting episode and he was sent to the doctor. ECF No. 31-1 at 51. Williams then updated the restrictions to make sure that Plaintiff " be excused from working in areas with fumes – bleach plant, kymar, [chem] prep, hog fuel, M&D's, chip unloading R8, power recovery lime kilns – can't be around fumes, smoke, welding fumes, dust, chips." ECF No. 31-2 at 59.

On July 31, 2012, Plaintiff met with Defendants' representative from human resources among others. ECF No. 31-1 at 51. Plaintiff was told not to come back until he was 100 percent better. *Id.*; ECF No. 23 at 3. He was subsequently placed on short term disability leave.

Between July 31, 2012 and April 2013, Defendants did not contact Plaintiff to explore his return. ECF No. 25 at 7. Only after Plaintiff retained an attorney and sent a demand letter did Defendants request that Plaintiff see Dr. Ronald Fleck, an occupational health specialist. *Id.* at 8. Dr. Fleck found that Plaintiff was fit to work at the mill. ECF No. 24-1 at 45-49. Defendants have not, however, brought Plaintiff back as a millwright or offered him the assistance of human resources personnel to find an acceptable position even after this assessment. Though Plaintiff testified at a Labor and Industries workers' compensation deposition that

he was not fit to work at the mill, ECF No. 20 at 11, Plaintiff has explained the circumstances of this statement and has maintained that he could work at Paper Machines 1, 2, or 3 or in the shipping department where exposure to fumes is manageable. ECF No. 25 at 8. Defendants' witnesses disagree. *See e.g.* ECF No. 21 at 4.

**B.    Procedural background**

Plaintiff filed the present action in Walla Walla Superior Court on May 20, 2013. ECF No. 1 at 2. Defendants removed the case to this Court pursuant to 28 U.S.C. § 1446(b). In his Amended Complaint for Damages, ECF No. 12, Plaintiff asserts that Defendants have (1) failed to reasonably accommodate his disability in violation of the Washington Law Against Discrimination, chapter 49.60 RCW ("WLAD"),[2] and (2) constructively discharged him for seeking reasonable accommodation for his disability. ECF No. 12 at 2-5. Defendants move for summary judgment, arguing that Plaintiff is unable to perform essential functions of the job with or without a reasonable accommodation. ECF No. 19 at 4. In addition, Defendants argue that no reasonable accommodation of Plaintiff's disability is possible and that Plaintiff has not met his burden of showing that he is

---

[2] Specifically, Plaintiff claims that Defendants violated RCW 49.60.030(1)(a) and .180(3) when they assigned him to work in the kymar part of the mill in violation of a medical restriction and when they did not make a reasonable effort to assign Plaintiff to work duties within his medical restrictions. ECF No. 12 at 3. Plaintiff also claims that Defendants refused to assign Plaintiff to an available position that Plaintiff could have performed within his restrictions. *Id.* at 3-4.

qualified for a different, acceptable position with Defendants. *Id.* at 15-19. Plaintiff disagrees and argues that Defendants have consistently refused to accommodate his disability and that Plaintiff is capable of performing the essential duties of a millwright, or a different position, if his disability is properly accommodated. ECF No. 26 at 14-15.

Because Defendants have not shown that there is no genuine dispute of material fact, their summary judgment motion is denied.

## II.    ANALYSIS

### A.    Legal standard

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

*///*

A fact is material if it could affect the outcome of the suit under governing law. *Id.* A dispute involving such facts is genuine when a reasonable jury could find in favor of the non-moving party. *Id.* A court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.    Failure to accommodate**

Under the WLAD, an employer may not discharge any employee "'because of . . . the presence of any sensory, mental, or physical disability.'" *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 532 (2003) (quoting RCW 49.60.280(2)). There are at least two possible theories of liability for failure to accommodate—failure to reasonably accommodate in the current position or failure to reassign. *See Davis*, 149 Wn.2d at 532, 536. Here, Plaintiff brings claims under both theories of liability.

1.    Failure to accommodate—current job

To establish a prima facie case under the WLAD for failure to reasonably accommodate in the current position,

> a plaintiff must show that (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

ORDER - 8

*Id.* at 532 (quoting *Hill v. BCTI Income Fund-I*, 144 Wn.2d 172, 192-93 (2001)).

Here, Defendants concede that Plaintiff has a physical abnormality that substantially limits his ability to perform the job and that they were given notice of this abnormality. *See* ECF No. 19 at 11. Defendants contend, however, that Plaintiff's disability limits his ability to perform essential functions of the millwright position and that his disability cannot be accommodated. *Id.* at 12-17. This Court finds that a genuine dispute of material fact exists as to whether a reasonable accommodation is possible and whether Plaintiff can perform the essential job functions when properly accommodated.

"The term 'essential functions' is derived from the WLAD's federal counterpart, the Americans with Disabilities Act (ADA)." *Davis*, 149 Wn.2d at 533. "'The term essential functions means the *fundamental job duties* of the employment position the individual with a disability holds or desires. The term 'essential functions' does not include the *marginal* functions of the position." *Id.* (citing 29 C.F.R. § 1630.2(n)(1)). In full, that regulation establishes that

> (2) A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> > (i) The function may be essential because the reason the position exists is to perform that function;
> >
> > (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

ORDER - 9

(iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

(3) Evidence of whether a particular function is essential includes, but is not limited to:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents.

29 C.F.R. § 1630.2(n). The *Davis* court added that "an 'essential function' is a job duty that is fundamental, basic, necessary, and indispensable to filling a particular position, as opposed to a marginal duty divorced from the essence or substance of the job." 149 Wn.2d at 533. An employer is not required to eliminate such an essential function under Washington law because that would be "tantamount to altering the very nature or substance of the job." *Id.* at 534 (citing *Pulcino v. Fed. Express Corp.*, 141 Wn.2d 629, 644 (2000)).

ORDER - 10

Defendants argue that Plaintiff cannot fulfill the essential functions of a millwright even if he is assigned exclusively to Paper Machine 1, 2, or 3 at the mill. ECF No. 19 at 12-15. They believe there is no place at the mill that is free from "dust, fumes, chemicals, and odors" and so no reasonable accommodation will prevent Plaintiff from having a gagging and vomiting episodes. *Id.* at 17; 19. Plaintiff contests this claim and argues that if Defendants respect his restrictions and accommodate his condition, he is capable of working at Paper Machine 3.

The Court finds it significant that a number of different medical professionals have consistently found Plaintiff fit to work at the mill. Dr. Ronald Fleck, who was requested by Defendants to perform a "fit for duty examination" found that Plaintiff "is able to perform his duties at Boise." ECF No. 24-1 at 47. More specifically, Dr. Fleck wrote

> [Plaintiff] cannot work in an environment where he will be exposed to chemical fumes, and he is physically and mentally capable of performing work at Boise as long as he does not have to wear a mask or be exposed to chemical fumes. It appears that if [Plaintiff] could work in the 1, 2, and 3 paper machine and shipping department area that it is his opinion that he would not have symptoms and he would be able to perform his job fine, and I think that would be reasonable because he thinks that that is a more controlled environment and there are not a lot of odors and chemical fumes and things in that area.

*Id.* at 47-48. It is significant that that some evidence establishes that Plaintiff can work in parts of the mill. This same evidence suggests that his work environment need not be entirely free from fumes and that "a more controlled environment"

without "a lot of odors and chemical fumes" is the extent of requisite accommodations. This creates a genuine dispute as to whether Plaintiff can work somewhere at the mill as a millwright.

Dr. Fleck's opinion is also shared by Serena Williams, a registered nurse practitioner who wrote a number of notes to Defendants on behalf of Plaintiff. *Id.* at 34, 36, 39, 41-44. In one, Williams wrote:

> It is my medical opinion that [Plaintiff] may return to light duty immediately with the following restrictions: He is unable to wear a mask, and can not [sic] work in an environment where he will be exposed to chemical fumes. He is mentally and physically capable of performing the job . . . I have reviewed the job description dated January 22, 2008, and have starred items 6e and 6f. He is unable to be exposed to fumes or gases, can not [sic] use a respirator due to his choking and emesis.
>
> If he were allowed to work in areas that did not require these elements, he could return to work today.

*Id.* at 41. The two starred items referenced by Williams are job requirements for Enhanced Journeyman Millwright. *Id.* at 42-43. The first, 6e, establishes that a millwright will be exposed to "dust/fumes/gases." *Id.* at 43. The second, 6f, establishes that a millwright will need to use a respirator. *Id.* These conditions and requirements, however, are not present in and do not apply to the mill at large, but to only parts of it. As Plaintiff explains, the job function evaluation form lists the areas where these conditions are necessarily present. ECF No. 25 at 9. Opposite exposure to "dust/fumes/gases," the form only lists "Bleach Plant, SVP kiln, Pulp

Mill, Chip dump" and not any of the Paper Machines. ECF No. 24-1 at 43. Opposite of "respirator" the form lists types of respirators that may be required. But Plaintiff argues that not all positions at the mill are required to use respirators. Accordingly, this too disputes Defendants assertions and could establish that Plaintiff can be assigned to the areas that do not require masks and are more controlled for fumes and gases.

Though this Court acknowledges that Defendants have offered competing evidence that suggests chemical fumes and gases are omnipresent at the mill, *see e.g.* ECF No. 31-2 at 39, settling whether Plaintiff, given his condition, can manage the levels of gases and fumes present at Paper Machine 3 is a question best left to a jury.

Defendants also argue that Plaintiff continued to have gagging and vomiting episodes even after being moved to Paper Machine 3 proves that Plaintiff cannot perform his essential job duties even if they grant his requested accommodation. ECF No. 19 at 14-15. This is because "all millwrights are required to work in other parts of the mill at times due to annual shut down periods, emergencies and other circumstances" even if they are assigned to a specific machine. *Id.* at 17. Essentially, Defendants argue that leaving Paper Machine 3 to other parts of the mill are essential job functions.

In his declaration, Plaintiff explains that all of the incidents of gagging and vomiting that he documented after being moved to Paper Machine 3 were a result of unusual incidents that did not involve essential job functions and could have been avoided had Defendants respected his medical restrictions. ECF No. 25 at 6. Specifically, Plaintiff attributes the issues he had after being assigned to Paper Machine 3 to instances when he had to use epoxy, weld, or go into an area known to have chemical fumes or gases. Plaintiff believes that none of those tasks are essential to being a millwright on Paper Machine 3. *Id.* Though Defendants vehemently deny this claim, the Court must interpret the evidence in the light most favorable to the nonmoving party.

In his declaration, Plaintiff discusses how rarely he has been asked to perform such tasks at the mill over the 36 years he has worked there. He states that a "millwright could [. . .] ordinarily go for three years without being asked to weld." *Id.* Plaintiff has been "a millwright since about 1992 or 1993, and [has] not been sent to 'kymar' for about 21 years" prior to being sent in July 2012, which included "eight years assigned to the paper machines as a millwright." *Id.* at 7. This declaration strongly suggests that there is a genuine dispute as to whether the

///

//

/

ORDER - 14

Job functions that gave Plaintiff trouble while he was assigned to Paper Machine 3 are essential and can be reasonably accommodated.[3]

In summary, this Court finds that there is a genuine dispute of material fact as to whether (1) chemical gases, fumes, and dust are so omnipresent at the mill as to make reasonable accommodation impossible; (2) assigning Plaintiff to Paper Machine 3 exclusively eliminates any essential job functions; (3) Plaintiff's episodes during the time that he was assigned to Paper Machine 3 indicate that no reasonable accommodation is possible; and (4) welding, grinding, and going to other parts of the mill during shutdowns are essential functions of the millwright position.

2.    Failure to accommodate—reassignment

According to Washington law, "[r]assignment is one method of accommodation." *Pulcino*, 141 Wn.2d at 643 (citing *MacSuga v. County of Spokane*, 97 Wn.App 435, 442 (1999)). The *Davis* court established that an "employer must take affirmative steps to assist the employee in the internal job search by determining the extend to the employee's disability, by inviting the

---

[3] This Court is mindful that according to 29 C.F.R. § 1630.2(n)(3), the determination of whether a job function is essential requires this Court to consider not only the employer's judgment, but also the amount of time spent performing the job duty, the consequences of not requiring the employee to perform that duty, and the work experiences of past and current employees in the position. Here, the Court has been presented contrasting views—the employer's and the employee's—regarding the essential functions of the millwright position. Both of these views can factor into the Court's determination and in the present dispute point to opposite conclusions. Because of this, the Court does not find summary judgment appropriate for this question.

employee to receive personal help from the employer's personnel office, and by sharing with the employee all job openings in the company." 149 Wn.2d at 536-37. An employee, on the other hand, must inform the employer of his qualifications, apply for all jobs that might fit his ability, and accept reasonably compensatory work that he could perform. *Id.* at 537. This is because "'[r]easonable accommodation . . . envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions.'" *Id.* at 536 (quoting *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408-09 (1995)).

Defendants argue that it is Plaintiff's burden to prove that there are other positions at the mill, identify the positions and their job requirements, and show that he is qualified to fill them and that they are not occupied. ECF No. 19 at 18. This is a misunderstanding of Washington law. Though an employee does have a burden to establish his qualifications, the law is absolutely clear on this being a collaborative process that requires the employer's personnel to assist the employee and make known any available positions.

Defendants have made no showing that they have met their burden to assist Plaintiff in reassignment. Plaintiff, on the other hand, testified at his deposition about asking Defendants for a different position as a planner. ECF No. 31-1 at 12. This planner position, however, was given to a different employee as an

accommodation. *Id.* at 13, 18. Plaintiff argues that he could perform the duties of the planner position because it is an office job that would keep him away from areas with chemical fumes and gases. *Id.* at 18-19. Further, Plaintiff testified he could not have applied for this position because it is one that managers assign to employees. *Id.* at 39. In addition, Plaintiff also testified that he is willing to be moved to the shipping department, which is an area of the mill where he has previously worked that would not cause him issues. *Id.*

This evidence is sufficient to create a genuine dispute as to whether Defendants could be held responsible for failing to accommodate Plaintiff through reassignment. Plaintiff's testimony creates a dispute as to whether there were other positions at the mill that he was qualified for that were assigned to other employees and not made known to him. Defendants, on the other hand, have not demonstrated their participation in the interactive process mandated by *Davis* other than their attempt to ascertain the extent of Plaintiff's disability. Accordingly, this question is also best resolved by a jury.

## C.   Constructive discharge

Defendants do not make separate argument for summary judgment on Plaintiff's constructive discharge claim. ECF No. 19 at 19-20. Instead, Defendants believe that this claim is predicated on the failure to reasonably accommodate. *Id.*

///

Accordingly, because Plaintiff's reasonable accommodation claims survive summary judgment, the constructive discharge claim survives as well.

### III.    <u>CONCLUSION</u>

This Court finds that there is a genuine dispute of material fact in this case that precludes summary judgment on any claim.

Accordingly, **IT IS HEREBY ORDERED**: Defendants' Motion for Summary Judgment, **ECF No. 19**, is **DENIED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 1st day of October 2014.

SALVADOR MENDOZA, JR.
United States District Judge